J-A09039-19

2019 PA Super 174

| | | |
|---|---|---|
| STEPHEN RATNER AND AUDREY RATNER AND DR. ROBERT OSTOYICH | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : : | |
| v. | : : | |
| | : : | No. 3347 EDA 2018 |
| IRON STONE REAL ESTATE FUND I, L.P. AND IRON STONE REAL ESTATE GROUP I, LLC AND ANDREW V. EISENSTEIN | : : : : | |

Appeal from the Order Entered October 1, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 01497 March Term, 2017

BEFORE:   KUNSELMAN, J., MURRAY, J., and PELLEGRINI*, J.

OPINION BY PELLEGRINI, J.:                    **FILED MAY 29, 2019**

This is an appeal by Stephen Ratner, Audrey Ratner and Dr. Robert Ostoyich (collectively, Limited Partners) from an order of the Court of Common Pleas of the First Judicial District (trial court) denying its request for summary judgment to find Iron Stone Real Estate Fund I, L.P. (Iron Stone LP or the Partnership) in dissolution while granting Iron Stone Real Estate Group I, LLC (Iron Stone LLC or the General Partner) and Andrew V. Eisenstein (Manager Eisenstein) (collectively, the Iron Stone) finding that the eight year extension of Iron Stone LP was valid under the partnership agreement.  For reasons set forth in this Opinion, we affirm certain aspects of the summary judgment order, but reverse the decision dismissing the

_____

*   Retired Senior Judge assigned to the Superior Court.

claim for dissolution of the Limited Partnership and remand to the trial court to order the dissolution in accordance with the Pennsylvania Uniform Limited Partnership Act.

## I.

## A.

We take the following factual background and procedural history from our review of the certified record. On August 17, 2005, a Certificate of Limited Partnership was filed with the Secretary of State of the Commonwealth of Pennsylvania to form a limited partnership named Iron Stone Real Estate Fund I, L.P. (Partnership) under the Pennsylvania Revised Uniform Limited Partnership Act, as amended. *See* 15 Pa.C.S. §§ 8501-8594 (Repealed). On February 28, 2006, Iron Stone LLC entered into "An Agreement of Limited Partnership of the Iron Stone Real Estate Fund I, L.P." (Limited Partnership Agreement).[1] Section 3 of the Limited Partnership Agreement provided the purpose of Limited Partnership "to acquire, hold, maintain, operate, develop, sell, improve, lease, license, pledge, encumber, dispose of and otherwise invest in, directly or indirectly, real estate and related assets." (R. 0028a).

Stephen Ratner and Audrey Ratner purchased two units out of 100 (a 2% ownership interest for a total of $200,000). Dr. Robert Ostoyich

_____

[1] The Limited Partnership Agreement is at R. 0027a–to R. 0067a.

purchased one unit out of 100 (a 1% ownership interest for $100,000) as limited partners in Iron Stone LP, who was the general partner.[2]

Section 4 of the Partnership Agreement provided that the term of the Partnership is "until December 31, 2015, unless earlier terminated in accordance with this Agreement or unless extended in the sole discretion of the General Partner for one or more of two additional consecutive periods of one year each." Pursuant to this provision, prior to the December 31, 2013 initial termination date, Defendant Iron Stone LLC as General Partner unilaterally extended the term of the Partnership Agreement for the two additional one-year periods, *i.e.* from December 31, 2013, to December 31, 2015.

At the expiration of the term of the Partnership, Section 10 of the Partnership Agreement governed how the Limited Partnership would be dissolved. It provides, in relevant part:

10.1. Dissolution

(a)  The Partnership shall be dissolved and its affairs wound up upon the happening of any of the following events:

***

(iv) The expiration of the term (as the same may be extended hereunder) of the Partnership;

---

[2] Each unit was purchased for $100,000. There were 100 units purchased so Iron Stone LP's fund totaled $10 million. (R.R. 541a; 872a).

(b)     After dissolution of the Partnership, the Partnership shall not terminate until the Partnership's Certificate of Limited Partnership shall have been canceled and the assets of the Partnership shall have been distributed. . .  **Notwithstanding dissolution of the Partnership, prior to the termination of the Partnership as aforesaid, the business of the Partnership and the affairs of the Partners, as such, shall continue to be governed by this Agreement.**  (Emphasis added)

**B.**

On April 25, 2016, four months after the expiration of the term of the Agreement, Iron Stone LP sent a "Memorandum to Limited Partners" stating in relevant part:  "We are writing to let you know about the next steps for Iron Stone Real Estate Fund I, L.P. ('Fund').  The fund was established in March 2006 with the expectation that all investments would be sold and the partnership unwound by the end of 2015.  But given the current status of Falls Center, the Fund's largest remaining investment, we believe the correct course is to extend the term of the fund for an additional eight (8) years." (R. 0069a-0071a).

After detailing the reasons why Iron Stone LP believed this extension was in the best interests of all of the limited partners, the "Memorandum to Limited Partners" concluded:  "We understand that this is a significant change to the plan we began with in 2006.  But after managing the Fund's portfolio, and Falls Center in particular, through the 2008 economic crisis we have positioned the remainder the portfolio for a positive outcome.  We believe that staying the course is the smart way to go." (R. 0071a).

Each limited partner was given a copy of the proposed amendment and a written consent form to sign and return. The consent form stated "this Unanimous Written Consent may be executed by any number of counterparts each of whom shall be an original. . ." (R. 0072a).

This vote extending the term of the partnership was purportedly authorized and conducted pursuant to Paragraph 15.1. titled "Amendment." It provides, in relevant part:

> (a) No alteration, modification or amendment of this Agreement shall be made unless in writing and signed (in counterpart or otherwise) by the General Partner and non -defaulting Limited Partners holding at least a majority of the outstanding Units held by non-defaulting Limited Partners, except that no alteration, modification or amendment of any section hereof which would materially and adversely affect the economic interests of one or more (but not all) of the non-defaulting limited Partners may be made (except as provided below) without the unanimous consent of all non-defaulting Limited Partners so adversely affected. An alteration, modification or amendment of any Section of this Agreement that materially and adversely affects the economic interests of all Limited Partners, as a class, may be made with the consent of the General Partner and Limited Partners holding 66% of the outstanding (hits bold by Limited Partners (including Units held by affiliates of the General Partner), except that no increase in the amount required to be contributed to the Partnership by the Limited Partners, other than as required herein or under applicable law, may be made without the consent of all the Limited Partners.
>
> * * *
>
> (c) Except as otherwise expressly provided for herein, whenever the General Partner desires to take any action which requires the consent or approval of all or a portion of the Limited Partners, the General Partner shall give written notice thereof (delivered in accordance with the requirements of Section 15.2 hereof) to each Partner from which any consent or approval is required describing the proposed action. As soon as practicable thereafter, each such Partner shall give the General Partner written notice (delivered in

accordance with the requirements of Section 15.2 hereof) that such Partner either consents to or approves or does not consent to or approve the proposed action.  In the event that any such Partner fails to respond (as provided herein) on or before the 30th day following notice, as provided herein, of any such proposed action by the 30th day following notice that Partner shall be conclusively presumed to have consented to or approved such action.

Each of the three Limited Partners voted to reject the extension of the duration of the Partnership because, among other reasons, a request for an extension occurred after the expiration.

Of all the Limited Partners who actually voted, over 66% of the Limited Partners voted to extend or abstained from voting to subsequently extend the Partnership for an additional eight years.  However, only 34.75% of the Limited Partners returned ballots agreeing to extend the Partnership and, thus, 65.25% of the Limited Partners either did not vote to extend or voted against the extension.  (R. 001047a).  Based on that vote, Iron Stone claimed that the term of the Partnership was extended through December 31, 2023. (R.0012a).  Iron Stone LLC, acting as the general partner, executed the proposed amendment and extended the term of Iron Stone LP eight years.

## C.

After their demand for payment of the value of their units, for an accounting of the value of their "units" and/or for the proper dissolution of the Partnership was refused, the Limited Partners filed a Complaint, later amended, and not as a derivative action brought on behalf of Iron Stone LP and/or the Limited Partners, as a class.  (R.R. 543a).  The Amended Complaint

asserted six causes of action alleging Breach of Fiduciary Duty (Count I), Breach of Implied Duty of Good Faith and Fair Dealing (Count II), Breach of Contract (Count III), Accounting (Count IV), Dissolution of Partnership (Count V) and Conversion (Count VI).

Underlying all of Limited Partners' claims was the manner by which the Limited Partnership Agreement was purportedly extended. They claimed that the vote to extend the Partnership Agreement was ineffective because it was not requested until after the limited partnership had expired; if the vote could have taken place, the vote to extend did not pass because it required unanimous consent because it would affect the rights of individual limited partners differently; and if it was not required to pass unanimously, then the vote count was faulty.

As to the other counts not dealing with the extension of the term of the limited partnership, they contended that because Manager Eisenstein, as managing partner, receives a management fee and/or salary from the management of the Partnership and, therefore, benefits individually from the improper continuation of the Partnership, breached the implied covenant of good faith and fair dealing each owed to the Plaintiffs causing them great financial loss. They also demanded an accounting and dissolution of the Partnership.

**D.**

On preliminary objections, the trial court dismissed the Limited Partnership's claims for breach of the implied duty of good faith and fair dealing and conversion. After the close of the pleadings, cross-motions for summary judgment were filed. Iron Stone sought dismissal of the remaining counts for breach of contract, breach of fiduciary duty, accounting and dissolution because the Limited Partners did not have standing to maintain those claims because they were derivative in nature and that the duration of the contract had been properly extended. In its cross-motion for summary judgment, the Limited Partners maintained the opposite but only sought dissolution of the Partnership.[3] The trial court granted Iron Stone LP's motion and denied the Limited Partners' motion for summary judgment.

In doing so, the trial court found that the breach of contract claim could not be sustained because the Iron Stone LP partnership term was extended in accordance with the Partnership Agreement because 66.67% of the Limited Partners consented to the extension of Iron Stone LPs' term in accordance with Paragraph 15.1(a) of the Partnership Agreement. It also stated that it

---

[3] Due to significant disputes during discovery, a discovery master was appointed to prevent turnover of the Limited Partners' personal financial information, the trial court granted Limited Partners' request that precluded them from seeking damages from the Defendants other than the value of their interests in the Partnership.

"does not find persuasive plaintiffs' relevance upon the term 'unanimous' on the consent form for the required vote." (Trial Court Opinion at 4.)

The trial court further found that Plaintiffs cannot recover under their Breach of Fiduciary Duty claim because (1) the "extension of Iron Stone, LP was proper" and (2) the damages alleged are derivative in nature and not personal to them." (*Id.* at 4-5). Finally, the trial court found that "[s]ince the claims for dissolution and accounting are also derivative in nature and not personal to them, the claims for dissolution and accounting are dismissed." (*Id.* at 5). After their Petition for Reconsideration was denied, the Limited Partners took this appeal.[4]

_____

[4] "Our scope of review of summary judgment orders is plenary. We apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law will summary judgment be entered.

Motions for summary judgment necessarily and directly implicate the plaintiffs' proof of the elements of their cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Thus, a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a prima facie cause of action or defense and, therefore, there is no issue to be submitted to the jury. Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The appellate Court may disturb the trial court's order only

**II.**

Initially, we must address whether the Limited Partners lack standing to maintain this action because those claims are derivative and not personal to them.

Under Pennsylvania law, a partner in a limited partnership has standing to personally assert a direct action against another partner if he has sustained "an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited partnership." 15 Pa.C.S. § 8691(b). However, "[w]hen a limited partner alleges wrongs to the limited partnership that indirectly damaged a limited partner by rendering his contribution or interest in the limited partnership valueless, the limited partner is required to bring his claim derivatively on behalf of the partnership." *Weston v. Northampton Pers. Care, Inc*., 62 A.3d 947, 957 (Pa. Super. 2013) (quotation marks omitted). In those circumstances, "such a claim belongs to, and is an asset of, the corporation." *Hill v. Ofalt*, 85 A.3d 540, 548 (Pa. Super. 2014).[5]

---

upon an error of law or an abuse of discretion." *Alexander v. City of Meadville*, 61 A.3d 218, 221 (Pa. Super. 2012) (quotation omitted).

[5] 15 Pa.C.S. § 8692 deals with derivative actions. It is the opposite of a direct action in that the harms are done to the limited partnership as a whole, not mainly affecting the individual partner. To bring a derivative action "the partner first makes a demand on the general partners requesting that they cause the partnership to bring an action to enforce the right" seeking to be rectified. If the general partner refuses to bring such an action, permits a

***Anglo Am. Sec. Fund, L.P. v. S.R. Glob. Int'l Fund, L.P.***, 829 A.2d

143, 150 (Del. Ch. 2003) [6] restated those principle and provided a test as to

how to determine whether a claim is direct or derivative.  It stated:

> The test looks to the nature of the injury and to the nature of
> remedy that could result if the plaintiffs are successful.  When a
> plaintiff alleges either an injury that is different from what is
> suffered by other shareholders (or partners) or one that involves
> a contractual right of shareholders (or partners) that is
> independent of the entity's rights, the claim is direct.  If the injury
> is one that affects all partners proportionally to their pro rata
> interests in the corporation, the claim is derivative.  In a derivative
> action the plaintiff sues for an injury done to the partnership and

---

limited partner to bring a derivative action.  Section 8692(a).  ***See*** Official
Comment to 15 Pa.C.S. § 8692 ("By its terms, this section permits a general
partner as well as a limited partner to bring a derivative action.").

[6] "Section 1927 of the Statutory Construction Act directs that, "[s]tatutes
uniform with those of other states shall be interpreted and construed to affect
their general purpose to make uniform the laws of those states which enact
them."  1 Pa.C.S. § 1927.  Although statutes, commentary and decisions of
our sister states are certainly not binding on this Court, it is important in
construing a uniform act to recognize how those states have interpreted
similar provisions.  ***See Sternlicht v. Sternlicht***, 583 Pa. 149, 876 A.2d 904,
911 n. 13 (2005) ("[I]n construing a uniform law, this Court must consider
the decisions of our sister states who have adopted and interpreted such
uniform law and must afford these decisions great deference.");  ***Continental
Ins. Co. v. Schneider, Inc.***, 582 Pa. 591, 873 A.2d 1286, 1294 n. 10 (2005)
("Although these cases involved other jurisdictions' versions of the UCC, they
are nevertheless persuasive authority here as the relevant provisions in their
UCC statutes are substantially similar to the provisions in the Pennsylvania
UCC[.]");  ***Commonwealth v. National Bank & Trust Co. of Central
Pennsylvania***, 469 Pa. 188, 364 A.2d 1331, 1335 (1976) ("While it is a
truism that decisions of sister states are not binding precedent on this Court,
they may be persuasive authority, ... and are entitled to even greater
deference where consistency and uniformity of application are essential
elements of a comprehensive statutory scheme like that contemplated by the
Uniform Commercial Code.") (citations omitted*.  **Koken v. Reliance Ins. Co.,***
893 A.2d 70, 83 (Pa. 2006).

any recovery of damages is paid to the partnership. Conversely, in a direct action the plaintiff sues to redress an injury suffered by the individual plaintiff and damages recovered are paid directly to the plaintiff who was injured. (footnotes omitted.)

In this case, in their six count Complaint, the Limited Partners make two types of claims. In Count I, Breach of Fiduciary Duty; Count II, Breach of Implied Duty of Good Faith and Fair Dealing; and Count IV, Conversion, they maintain, among other things, that Manager Eisenstein improperly made multi-million dollar loans to related parties; that he received millions of dollars in improper administrative and management fees; and that he was being paid excessively. In each of those counts they sought damages for the alleged improper dealings.

Those counts are clearly derivative because they claim that the General Partner and Manager Eisenstein received improper payments, making any damages due to the Limited Partnership and not to Limited Partners, even though they may be incidentally affected. Because the injury claimed in those counts affects all partners proportionally to their pro rata interests in the corporation, they are derivative and the Limited Partners do not have standing to maintain those counts.

However, those counts that set forth Breach of Contract (Count III,) Accounting (Count IV), and Dissolution of Partnership (Count V), the Limited Partners are claiming that the General Partner Iron Stone LLC refused to wind up the affairs of the Limited Partnership because under the Limited Partnership Agreement, it was in dissolution, as well as access to its financial records.

These are types of breaches to the partnership agreement that injures a partner in a way that is not incidental to an injury to the partnership allowing for a direct action to be brought by the injured limited partner.

In **Anglo Am. Sec. Fund**, the Delaware court also stated: "When a plaintiff alleges ... an injury ... that involves a contractual right of shareholders (or partners) that is independent of the entity's rights, the claim is direct." **See Anglo American**, 829 A.2d at 150. **See also Ionosphere Clubs, Inc. v. American National Bank & Trust Company of Chicag**o, 17 F.3d 600, 605 (2nd Cir. 1994); **see also** Callison and Sullivan, Partnership Law and Practice: General and Limited Partnerships § 28.3 (2004) (noting that a direct action is appropriate "to enforce the right to inspect limited partnership books and records, to compel distributions required by the limited partnership agreement, to enforce voting rights, and to compel dissolution of the limited partnership.)

Because in counts seeking dissolution and accounting (Counts III, IV and V), the Limited Partners are seeking the enforcement of their individual rights and return of monies individually to them as required under the Limited Partnership Agreement and/or the Limited Partnership Act, and this is a direct action within the meaning of 15 Pa.C.S. § 8691(b) and the Limited Partners have standing to maintain those counts.

Now to the merits.

**III.**

Central to the resolution of this appeal is whether the trial court erred in holding that the Partnership Agreement was properly extended. There is no dispute that a vote taken pursuant to Section 15.1 to amend the Partnership Agreement to extend its duration prior to its December 31, 2015 termination date would have been permissible. The question is whether the duration of the Partnership Agreement can be extended after the Partnership had expired.[7]

The Limited Partners contend that the duration of the Partnership cannot be extended because Section 10.1 (iv) of the Partnership Agreement provides that the partnership "shall be dissolved and its affairs wound up" on December 31, 2015, the expiration of the term of the Partnership. This is bolstered by 15 Pa.C.S. § 8681(1) that states "A limited partnership is dissolved, and its activities and affairs must be wound up," when "an event

---

[7] Like the trial court, we do not find persuasive the Limited Partners' argument that the term "unanimous" on the consent form to be in any way determinative. The Partnership Agreement provides the percentage of the vote to be required and that cannot be altered by the consent form. No argument is made that the voters were in any way mislead by this mistake. Moreover, because their reasons are merely speculative, we also find unpersuasive the Limited Partners' argument that the requisite votes were not received to extend the duration of the Limited Partnership, if the Limited Partnership could be extended while it was in dissolution. Finally, we note that the Limited Partners refer to 15 Pa.C.S. § 8353;15 Pa.C.S. § 8352, and 15 Pa.C.S. § 8449 in support of its position. We note that those provisions are inapplicable because they apply to partnerships and not limited partnerships.

or circumstance that the partnership agreement states causes dissolution." After that date, they contend, the duration of the Partnership cannot be extended because it is in dissolution.

Iron Stone contends, however, that under Section 15.1 of the Partnership Agreement, the duration of the Partnership can be extended even after an event occurs that the Partnership Agreement triggers dissolution. Section 10.1 of the Partnership Agreement does provide:

> Notwithstanding dissolution of the Partnership, prior to the termination of the Partnership as aforesaid, the business of the Partnership and the affairs of the Partners, as such, shall continue to be governed by this Agreement.

Iron Stone also points to the Official Comment to 15 Pa.C.S. § 8681, which states, in relevant part:

> In some circumstances, an amendment to the limited partnership agreement might avert dissolution--*e.g.*, by revising an agreed-upon deadline for selling the partnership assets and winding up the business. A retroactive amendment may also be possible. *See Kindred Ltd. P'ship v. Screen Actors Guild, Inc.*, CV082220PSGPJWX, 2009 WL 279080 at *5-6 (C.D. Cal. Feb. 3, 2009) (giving effect to an amendment that retroactively eliminated an event of dissolution).

This Comment is a direct lift from the official comments to Section 801 of the Uniform Limited Partnership Act of 2013. Unif.Ltd.Part.Act 2013 § 801. Iron Stone concludes by saying that under both the Partnership Agreement and 15 Pa.C.S. § 8681, duration of the Partnership can be extended beyond the agreed date of dissolution, *i.e.* December 31, 2015, for eight additional years, *i.e.* December 31, 2023.

- 15 -

To answer whether the Partnership can be extended after a date that the Partnership and Agreement was extended, it is necessary to examine whether there is anything in the Limited Partnership Act that would preclude extension of the duration of the Partnership and how it varies from the Uniform Partnership Act of 2016.

A limited partnership is governed by both the terms of the Partnership Agreement as well as the laws regarding limited partnerships. **See** 15 Pa.C.S.A. § 8611; 15 PaC.S. § 8616. While this Limited Partnership was formed under the Pennsylvania Revised Uniform Limited Partnership Act, the Revised Act was superseded by the Pennsylvania Uniform Limited Partnership Act of 2016. 15 Pa.C.S. § 8611-8695. This Act adopted, with an omission important here, the Uniform Limited Partnership Act 2013. With several exceptions, the Pennsylvania Uniform Limited Partnership Act of 2016 governs and regulates the conduct of all limited partnerships in Pennsylvania even though they were formed prior to its effective date. 5 Pa.C.S. § 8611(c.).[8]

---

[8] One of those exceptions set forth in 5 Pa.C.S. § 8611 (d) states that "Section 8620(c) (relating to characteristics of limited partnership) does not apply and the limited partnership has whatever duration it had under the law applicable immediately before February 21, 2017." Section 8620(c) provides that "A limited partnership has perpetual duration." However, there is nothing in the Act that forbids the Partnership from varying this provision and have for a definite set of terms. 15 Pa.C.S. § 8615.

Generally, the partnership agreement governs the duties, rights and obligation of the parties. There are however, some provisions of the Act that a partnership agreement may not vary. Pertinent here, 15 Pa.C.S. § 8615(c)(16) provides that a partnership agreement may not "[v]ary the requirements to wind up the partnership's activities and affairs specified in section 8682(a), (b)(1), (d) and (e) (relating to winding up and filing of certificates)." Of those subsections, only 15 Pa.C.S. § 8682(a) is pertinent. It provides that "[a] dissolved limited partnership shall wind up its activities and affairs and the partnership continues after dissolution only for the purpose of winding up." *Id.*

As to the question of recession of the dissolution, the Limited Partnership Act is silent. This is unlike the Uniform Partnership Act of 2013 upon which the Limited Partnership Act is based. The Unif.Ltd.Part.Act 2013 § 803 specifically provides that dissolution can be rescinded with the affirmative vote of each partner.[9] When adopting the Limited Partnership Act,

---

[9] Unif.Ltd.Part.Act 2013, § 803, provides that:

    (a)    A limited partnership may rescind its dissolution, unless a statement of termination applicable to the partnership has become effective, [the appropriate court] has entered an order under Section 801(a)(6) dissolving the partnership, or the [Secretary of State] has dissolved the partnership under Section 811.

    (b)    Rescinding dissolution under this section requires:

our General Assembly did not adopt this provision; instead, at 15 Pa.C.S. § 803 where this provision would have been adopted, it just states "Reserved."

This leads us back to the Comment to 15 Pa.C.S. § 8681 which is a direct lift from the Official Comment to the Unif.Ltd.Part.Act 2013 § 801. That Comment cites to **_Kindred Ltd. P'ship v. Screen Actors Guild, Inc.,_** CV082220PSGPJWX, 2009 WL 279080 at *5-6 (C.D. Cal. Feb. 3, 2009), an unreported federal district court case. One of the subsidiary issues in that case was whether a 2008 amendment to the partnership agreement was valid

---

(1) the affirmative vote or consent of each partner; and
(2) if the limited partnership has delivered to the [Secretary of State] for filing an amendment to the certificate of limited partnership stating that the partnership is dissolved and:

(A) the amendment has not become effective, delivery to the [Secretary of State] for filing of a statement of withdrawal under Section 208 applicable to the amendment; or
(B) the amendment has become effective, delivery to the [Secretary of State] for filing of an amendment to the certificate of limited partnership stating that dissolution has been rescinded under this section.

(c) If a limited partnership rescinds its dissolution:

(1) the partnership resumes carrying on its activities and affairs as if dissolution had never occurred;
(2) subject to paragraph (3), any liability incurred by the partnership after the dissolution and before the rescission has become effective is determined as if dissolution had never occurred; and
(3) the rights of a third party arising out of conduct in reliance on the dissolution before the third party knew or had notice of the rescission may not be adversely affected.

so as to prevent immediate dissolution on June 21, 1989, and default. The resolution of that question involved Cal. Corp. Code § 16802(b), a provision similar to the Unif.Ltd.Part.Act 2013 § 803, which provides:

> At any time after the dissolution of a partnership and before the winding up of its business is completed, all of the partners, including any dissociating partner other than a wrongfully dissociating partner, may waive the right to have the partnership's business wound up and the partnership terminated. In that event both of the following apply:
>
> (1) The partnership resumes carrying on its business as if dissolution had never occurred, and any liability incurred by the partnership or a partner after the dissolution and before the waiver is determined as if dissolution had never occurred.
>
> (2) The rights of a third party accruing under paragraph (1) of Section 16804 or arising out of conduct in reliance on the dissolution before the third party knew or received a notification of the waiver may not be adversely affected.

The district court held that because California law allows partners to cancel dissolution "at any time," and that in the event of dissolution, the cancellation is retroactive, that when all the limited partners voted to rescind the dissolution, such dissolution is deemed never to have occurred. Because, unlike California and the Uniform Limited Partnership Act, the Pennsylvania Limited Partnership Act does not contain a provision regarding recession of the dissolution, the Comment to 15 Pa.C.S. § 8681 has no application. It also means that the Pennsylvania Limited Partnership Act does not provide for recession of dissolution of a limited partnership.

In conclusion:

- 15 Pa.C.S. § 8681(1) states that "A limited partnership is dissolved, and its activities and affairs must be wound up," when "an event or circumstance that the partnership agreement states causes dissolution."

- Section 10.1 (a)(iv) of the Partnership Agreement provides that the Partnership shall be dissolved and its affairs wound up at the expiration of the term of the Partnership, *i.e.* December 31, 2015.

- That means after December 31, 2015, under the terms of the Partnership Agreement, the Partnership went into dissolution.

- After a partnership goes into dissolution, 15 Pa.C.S. § 8615(c)(16) provides that a partnership agreement cannot vary the requirements for winding up a dissolved partnership set forth at 15 Pa.C.S. § 8682(a), which provides that the dissolved partnership only exists for the purpose of winding up.

- Because a partnership agreement may not vary the requirements to wind up the partnership's activities and affairs specified in section 8682(a), Section 10.1 of the Partnership Agreement that allows for retroactive recession of the dissolution of the corporation is inoperative.

- Moreover, because nothing in the Pennsylvania Uniform Partnership Act authorizes recession of a dissolution of a Limited Partnership, then the vote to retroactively extend the duration was ineffective.

Accordingly, the trial court's granting of that portion of Iron Stone's motion for summary judgment dismissing Limited Partners' Count I, Breach of Fiduciary Duty; Count II, Breach of Implied Duty of Good Faith and Fair Dealing, and Count VI, Conversion of the Complaint as being derivative is affirmed. However, that portion of the trial court's order dismissing Count IV, Breach of Contract, Count V, Dissolution of Partnership and Count III, Accounting, as well as the trial court's denial of the Limited Partnership's claim

- 20 -

seeking to have the General Partners begin winding up the affairs of the Limited Partnership are reversed. The matter is remanded to the trial court to enter an order that the Limited Partnership shall wind up its activities and affairs in accordance with 15 Pa.C.S. § 8682.

Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/29/19