NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IMH SPECIAL ASSET NT 168 LLC, et al., *Plaintiffs/Appellants*,

*v.*

GREGORY M BECK, *Intervenor/Appellee*.

No. 1 CA-CV 19-0156
FILED 10-22-2020

Appeal from the Superior Court in Maricopa County
No. CV2010-010943
No. CV2010-010990
(Consolidated)
The Honorable James D. Smith, Judge
The Honorable Karen A. Mullins, Judge

**VACATED AND REMANDED**

COUNSEL

Snell & Wilmer L.L.P., Phoenix
By Christopher H. Bayley (argued), Benjamin W. Reeves, and James G. Florentine
*Counsel for Plaintiffs/Appellants*

Udall Shumway, Mesa
By Joel E. Sannes (argued), Carson T. H. Emmons
*Counsel for Intervenor/Appellee*

---

## MEMORANDUM DECISION

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge James B. Morse Jr. and Judge Maria Elena Cruz joined.

---

**M c M U R D I E**, Judge:

**¶1**　　　　Appellants, IMH Special Asset NT 161, LLC and IMH Special Asset NT 168, LLC (collectively "IMH"), challenge several aspects of the superior court's rulings in favor of Appellee Gregory M. Beck. For the reasons set forth below, we vacate and remand.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**　　　　Recorp New Mexico Associates, LP ("RNMA I") is a single asset New Mexico limited partnership that owns a large land parcel northwest of Albuquerque, New Mexico. RNMA I is governed by a "Limited Partnership Agreement of Recorp-New Mexico Associates Limited Partnership" (the "Partnership Agreement"). When this dispute arose, Recorp Partners, Inc. ("RPI") was RNMA I's managing general partner. IMH and its subsidiaries own or control approximately 13 percent of the limited partnership interests of RNMA I. Beck individually owns an approximately seven percent limited partnership interest in RNMA I.

**¶3**　　　　In 2012, IMH obtained a significant judgment against David Maniatis and several entities and individuals, not parties to this appeal.[1] As a result, Maniatis agreed to transfer his 9.6 percent ownership interest in RPI to an IMH subsidiary, Stockholder, LLC ("Stockholder"). At that time, Perma, LLC ("Perma"), an entity controlled by Maniatis, held the remaining 90.4 percent interest in RPI.

---

[1]　　　　This court affirmed that judgment in part. *IMH Special Asset NT 168, LLC v. Aperion Communities*, *LLLP*, Case No. 1 CA-CV 13-0131, 2016 WL 7439001, at *10, ¶ 53 (Ariz. App. Dec. 27, 2016) (mem. decision). On remand, the superior court entered a *nunc pro tunc* judgment, which we affirmed. *MW2 Investments LLC v. IMH Special Asset NT 168 LLC*, Case No. 1 CA-CV 18-0271, 2019 WL 6910436, at *5, ¶¶ 22-24 (Ariz. App. Dec. 19, 2019) (mem. decision).

¶4            IMH's collection efforts resulted in the creation of two receiverships in 2013. The first receivership took control of Stockholder in June 2013 (the "Stockholder Receivership"). The second receivership took control of other assets previously held or controlled by Maniatis, including Perma (the "Bierman Receivership"). The Bierman Receivership concluded in April 2015, at which time Perma was conveyed to Stockholder, granting it control of Perma and its RPI shares.

¶5            In September 2015, the Stockholder Receiver made a capital call on RNMA I's limited partners, including Beck (the "First Capital Call"). Other than the IMH subsidiaries, none of the limited partners provided funds.

¶6            RNMA I was set to dissolve on December 31, 2015, after which there would be a "liquidation period not to exceed 12 months." No partner took action to extend the dissolution date before it elapsed.

¶7            In September 2016, RPI made a second capital call on the RNMA I limited partners (the "Second Capital Call"). The non-IMH-subsidiary limited partners again provided no funds. In November 2016, a well that accessed deep groundwater in which RNMA I held an interest began leaking toxic water, causing significant environmental problems. Around that time, the Stockholder Receiver sought emergency relief, asking the court to allow it to borrow approximately $1.4 million from MRH Lending, LLC, an IMH subsidiary, to perform repairs (the "Well Repair Loan"). The court denied the emergency motion.

¶8            Believing that the Well Repair Loan would deprive him of his RNMA I interest, Beck communicated with other RNMA I limited partners seeking to build support to have RPI removed as the general partner. He also moved to intervene in the underlying action. IMH did not oppose the motion, and the superior court allowed Beck to intervene.

¶9            On December 1, 2016, Beck wrote the Stockholder Receiver to inform him that more than 75 percent of the RNMA I limited partners had voted to remove RPI as the general partner for cause under section 19.2 of the Partnership Agreement. Attached to Beck's letter were approximately 30 consent forms in which RNMA I limited partners "[a]pprove[d] . . . the removal of [RPI] as General Partner, for cause" and "appoint[ed] . . . [Beck] as the undersigned's attorney-in-fact to vote in favor of" RPI's removal (the "Consent Forms"). The Consent Forms also included an amendment to the

Partnership Agreement purporting to extend RNMA I's term to December 31, 2025.

¶10      RPI took the position that the removal attempt did not comply with the Partnership Agreement. While it acknowledged the agreement allowed it to challenge the removal attempt in arbitration, RPI contended there was "no need" to do so because the effort was "void on its face." Instead, it continued to act as the general partner, making another capital call on the limited partners in January 2017 (the "Third Capital Call").

¶11      None of the limited partners except for IMH subsidiaries provided any funds in response to the Third Capital Call. After IMH funded the unpaid portions of the Third Capital Call, RPI notified the non-contributing limited partners that it had terminated their interests.

¶12      Shortly thereafter, Beck moved the court for an order that RPI lacked authority "to take any action as general partner of [RNMA I]." The court considered the motion but did not expressly grant or deny the requested relief. *But cf. Atchison, Topeka & Santa Fe Ry. Co. v. Parr*, 96 Ariz. 13, 15 (1964) (Motions the superior court does not rule on are deemed denied.).

¶13      In July 2017, the court appointed a replacement Stockholder Receiver. Two months later, it ruled that the Stockholder Receivership should be terminated and allowed Stockholder to "continue to manage the shares of stock directly." Beck then requested an evidentiary hearing to determine:

> 1. Whether RNMA I had been dissolved;
>
> 2. Whether RPI had the authority to act as RNMA I's general partner after the December 2016 removal attempt;
>
> 3. Whether the receivership orders or the Partnership Agreement authorized the Third Capital Call; and
>
> 4. Whether IMH could become RNMA I's *de facto* general partner after it terminated RPI's then-president.

The hearing began in December 2017 but did not conclude until November 2018. In May 2018, the court ordered the parties to submit any remaining sworn witness testimony and make the testifying witnesses available for court questioning. IMH raised due-process objections, which the court overruled. IMH sought special-action review over the court's decision, but

we declined to exercise jurisdiction. Around that time, the court directed the Stockholder Receiver to "issue a Superseding Irrevocable Stock Power to clarify the transfer of shares to [RPI]" and discharging him "after he issues the Superseding Irrevocable Stock Power (if not yet done)." The parties agreed the Stockholder Receiver had already issued that document several months earlier, but the court did not formally discharge the Stockholder Receiver until May 2019.

¶14    After the hearing concluded in November 2018, the court ruled that (1) the Stockholder Receiver did not have the power to manage RNMA I during the time the receivership order was in place; (2) the Stockholder Receivership order did not authorize the Third Capital Call or the subsequent forfeiture of Beck's limited partnership interest; and (3) Beck's interest was not forfeited (the "January 2019 Ruling"). IMH moved to vacate, alter, or amend the January 2019 Ruling under Arizona Rules of Civil Procedure ("Rules") 59(a), 59(d), and 60(b). It also appealed the January 2019 Ruling, which we stayed pending resolution of the post-judgment motions.

¶15    The superior court stayed the January 2019 Ruling and set a bench trial to determine "(1) whether [Stockholder] owned 9.6 or 100 percent of [RPI], and (2) whether the actions of [RPI] as General Partner of [RNMA I] were authorized under the Receivership Order." Following the trial, the superior court ruled as follows (the "November 2019 Ruling"):

> It had jurisdiction to resolve the dispute between IMH and Beck under the order winding up the Stockholder Receivership;
>
> Stockholder "came to own 100% of RPI";
>
> Beck did not violate the injunction included in the Stockholder Receivership order;
>
> The removal of RPI as the general partner did not violate the RNMA I Partnership Agreement.

On these findings, the superior court granted IMH's motion regarding Stockholder's ownership interest in RPI but otherwise denied it. The court determined that "RPI could not act as the general partner for RNMA I after the written notice of removal." It deemed that its acts after receiving written notice—which included the Third Capital Call and the termination and assignment of Beck's limited partnership interest—were *ultra vires*. The court also ruled that RPI "may contest its removal via arbitration under the

partnership agreement," which it had not yet done, and noted the parties' agreement that "the only issue remaining for an arbitrator is whether cause existed to remove RPI."

**¶16** IMH timely appealed from the January 2019 and November 2019 Rulings. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(4).

## DISCUSSION

**¶17** We review the denial of Rule 59 and Rule 60 motions for an abuse of discretion. *See Am. Power Prods., Inc. v. CSK Auto, Inc.*, 239 Ariz. 151, 154, ¶ 10 (2016) (Rule 59); *City of Phoenix v. Geyler*, 144 Ariz. 323, 328 (1985) (Rule 60). Following a bench trial, we review the superior court's legal conclusions *de novo* but defer to its findings of fact unless clearly erroneous. *Town of Marana v. Pima County*, 230 Ariz. 142, 152, ¶ 46 (App. 2012). A finding of fact is not clearly erroneous if supported by substantial evidence, even if there is significant conflicting evidence. *Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 51–52, ¶ 11 (App. 2009).

## A. The Superior Court Must Determine the Effects of RNMA I's Dissolution Date.

**¶18** IMH contends the superior court "failed to decide the effect of the December 31, 2015 dissolution date in the . . . Partnership Agreement," an issue it argues "is critical to the resolution of the parties' dispute." While this court is not a factfinder, we may consider pure legal issues the superior court leaves unresolved. *See Bills v. State Bd. of Educ.*, 169 Ariz. 366, 369–70 (App. 1991) (declining to remand and addressing two issues "left untouched by the superior court" because they could be "resolve[d] by statutory interpretation" and "no genuine issues as to any material facts" remained).

### 1. The Limited Partners' Attempt to Extend RNMA I's Term Through 2025 Was Invalid.

**¶19** As noted above, the Consent Forms included an amendment to Article VI of the Partnership Agreement extending the term of RNMA I through December 31, 2025.[2] IMH argues the limited partners could not

---

2       The Consent Forms erroneously identify Article IV.

retroactively extend the December 31, 2015 dissolution date, pointing out that the Consent Forms were not executed until November 2016.

**¶20**        Beck argues section 23.8 of the Partnership Agreement allows amendments with the Limited Partners' approval owning at least 75% of the Units and does not prohibit retroactive amendments. Even if section 23.8 expressly allowed retroactive amendments, New Mexico law does not allow parties to "vary the requirement to wind up the partnership's business as specified in Section 803 of the Uniform Revised Limited Partnership Act" in a partnership agreement. N.M.S.A. § 54-2A-110(B)(10). Section 803, in turn, only authorizes a limited partnership to continue after dissolution "for the purpose of winding up its activities." N.M.S.A. § 54-2A-803(A). And "a limited partnership is dissolved, and its activities must be wound up . . . upon . . . the happening of an event specified in the partnership agreement"—here, the established dissolution date of December 31, 2015. N.M.S.A. § 54-2A-801(A). We conclude New Mexico law barred the limited partners' attempt to extend RNMA I's term retroactively. *Cf. Ratner v. Iron Stone Real Estate Fund I, L.P.*, 212 A.3d 70, 78–81 (Pa. Super. 2019) (holding that Pennsylvania's version of the Uniform Limited Partnership Act did not permit post-dissolution votes to extend a limited partnership's term).

> **2.     We Do Not Reach IMH's Contention That RNMA I's Activities Went Beyond the Twelve-Month Wind-Up Period.**

**¶21**        IMH next contends RNMA I became a general partnership because its activities went beyond the twelve-month wind-up period called for in the Partnership Agreement. We note, however, that IMH discouraged the superior court from enforcing this limitation, calling it "arbitrary" and arguing that section 20.2 of the Partnership Agreement "recogniz[ed] the paramount import of an orderly liquidation." Indeed, IMH argued that "as a practical matter, RPI can continue to manage RNMA I until RNMA I's assets are ripe for liquidation." And both the Stockholder Receiver and RPI's then-president testified that it would have been impractical to liquidate RNMA I's assets by December 31, 2016.

**¶22**        The superior court did not address this issue, which hinges on numerous disputed facts. Indeed, IMH argued RPI's post-December 31, 2015 actions "were done in furtherance of the wind-up of RNMA I; to bring about the optimal circumstances for liquidation of RNMA I's assets" but noted that "[t]he parties . . . dispute what constitutes 'winding up activities.'" The superior court should address this issue in the first instance.

*See Muscat by Berman v. Creative Innervisions LLC*, 244 Ariz. 194, 200, ¶ 22 (App. 2017) (declining to rule on a claim where the superior court did not "separately analyze [it] in its detailed ruling"); *see also Broadband Dynamics, LLC v. SatCom Mktg., Inc.*, 244 Ariz. 282, 287, ¶ 14 (App. 2018) (declining to address an issue on appeal "because the superior court did not address it and the facts are not sufficiently developed to permit a proper legal analysis").

## B.  Beck Sufficiently Complied with Rule 24.

**¶23**        We address one other argument raised by the appeal as the issue may occur on remand. *See Buckholtz v. Buckholtz*, 246 Ariz. 126, 131, ¶ 17 (App. 2019); *State v. Abdi*, 226 Ariz. 361, 366, ¶ 18 (App. 2011) (court to address issues likely to arise on remand); *Dawson v. Withycombe*, 216 Ariz. 84, 113, ¶ 98 (App. 2007).

**¶24**        IMH contends the court should not have allowed Beck to intervene because his motion did not include a proposed pleading as required by Rule 24(c)(1)(B). While IMH raised this issue in multiple filings after the court allowed Beck to intervene—including in its motion to vacate, amend, or alter the January 2019 Ruling—it did not initially object to Beck's motion to intervene. The court could have granted the motion on that basis alone. Ariz. R. Civ. P. 7.1(b)(2).

**¶25**        In any event, we reject IMH's formalistic objection. As no Arizona court has yet addressed this issue, we may consult federal court interpretations of the substantially similar Federal Rule of Civil Procedure 24 for guidance. *Heritage Village II Homeowners Ass'n v. Norman*, 246 Ariz. 567, 572, ¶ 19 (App. 2019). Federal courts typically are "quite lenient in permitting participation by parties who failed to comply strictly with Rule 24." *Pub. Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 784 (1st Cir. 1988) (citing cases). Indeed, "it is rare that only procedural grounds are proffered for denial." *U.S. ex rel. Frank M. Sheesley Co. v. St. Paul Fire and Marine Ins.*, 239 F.R.D. 404, 410 (W.D. Pa. 2006) (quoting Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1914, p. 414-15 (2d ed. 1986)). As such, federal courts have allowed intervention without a proposed pleading if the applicant makes his positions clear in his motion. *See, e.g.*, *Spring Const. Co. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980) (allowing intervention despite failure to attach proposed pleading because "[t]he petition and accompanying affidavit . . . set forth sufficient facts and allegations to apprise Spring of LTIC's claims"); *Bituminous Cas. Corp. v. Garcia*, 223 F.R.D. 308, 311, n.4 (N.D. Tex. 2004).

¶26 Here, Beck explained that (1) he owns a limited partnership interest in RNMA I; (2) RNMA I would be affected by the Court's ruling on the motion seeking approval of the Well Repair Loan; (3) his limited partnership interest could be virtually wiped out if the Court allowed the Well Repair Loan to proceed; and (4) "[n]o other limited partner in RNMA I . . . has intervened to protect RNMA I's interests, nor is the general partner protecting RNMA I's interests." The superior court did not err by allowing Beck to intervene.

## C. **We Decline to Award Attorney's Fees on Appeal.**

¶27 Both parties request their attorney's fees incurred in this appeal under A.R.S. § 12-341.01(A). IMH offers no argument regarding why it would be entitled to recover fees. Beck states that he is "unaware of IMH's basis for asserting a right to recover fees under A.R.S. § 12-341.01," and only claims them "to the same extent IMH asserts it is entitled to fees." In our discretion, we decline to award fees to either side.

## CONCLUSION

¶28 We vacate the court's determination that the limited partners extended RNMA I's dissolution date and remand for further proceedings consistent with this decision. IMH is the successful party on balance in this appeal and may recover its taxable costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:    AA