**[J-46-2023]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | |
|---|---|
| MBC DEVELOPMENT, LP, MBC MANAGEMENT, LLC, MBC PROPERTIES, LP, JAMES L. MILLER, MILLER PROPERTIES MANAGEMENT, LLC, MARTIN CERULLO, WILLIAM KIRWAN<br><br><br>v.<br><br>JAMES W. MILLER<br><br><br>APPEAL OF: MBC DEVELOPMENT, LP, MBC MANAGEMENT, LLC, MBC PROPERTIES, LP, JAMES L. MILLER, AND MILLER PROPERTIES MANAGEMENT, LLC | : No. 1 MAP 2023<br>:<br>:<br>: Appeal from the Order of the<br>: Superior Court dated August 12,<br>: 2022 at No. 1295 MDA 2021<br>: Vacating in Part/Affirming In Part the<br>: Order of the Schuylkill County Court<br>: of Common Pleas, Civil Division,<br>: dated September 28, 2021 at No. S-<br>: 797-2021 and Remanding.<br>:<br>: ARGUED:  September 13, 2023<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**OPINION**

JUSTICE MUNDY                                          DECIDED:  May 31, 2024

We granted allowance of appeal to consider whether a limited partner may invoke the mandatory arbitration provision in the limited partnership agreements to compel arbitration of his challenges to a special litigation committee's recommendation.  Because we conclude the limited partnerships' agreements incorporated the Pennsylvania Uniform Limited Partnership Act of 2016 (PULPA), 15 Pa.C.S. §§ 8611-8695, which clearly and unambiguously provides for judicial review of a special litigation committee's recommendation, we reverse the Superior Court's decision concluding an arbitrator could conduct the review of the special litigation committee's determination.

# I. FACTUAL AND PROCEDURAL HISTORY

James W. Miller (Appellee) and his father James L. Miller (JLM) are two of the limited partners in MBC Properties, LP and MBC Development, LP (LPs), two entities engaged in real estate development, investment, acquisition, and management.[1] The general partners are two limited liability corporations, MBC Management, LLC and Miller Properties Management, LLC (LLCs), of which JLM owns more than 99%. JLM founded the LPs and LLCs and serves as the managing member of the LLCs. As relevant to this appeal, the limited partnership agreements contain a mandatory arbitration clause providing, in part, "[a]ny dispute or controversy arising under or in connection with this Agreement shall be settled exclusively by arbitration in accordance with the rules of the American Arbitration Association." Limited Partnership Agreement of MBC Development, LP, 5/14/02, at 23-24, § 11.1 (R.R. at 109-10a); Limited Partnership Agreement of MBC Properties, LP, 8/1/11, at 26, § 11.1 (R.R. at 140a).[2] The limited partnership agreements

---

[1] The limited partners in MBC Development, LP are JLM, Appellee, and Rebecca Hoover. The limited partners of MBC Properties, LP are JLM, Appellee, the James L. Miller GST Exempt Trust, and the Michelle L. Miller GST Trust.

[2] The full mandatory arbitration provision in the limited partnership agreements is as follows:

> Section 11.1 Mandatory Arbitration
>
> A. Any dispute or controversy arising under or in connection with this Agreement shall be settled exclusively by arbitration in accordance with the rules of the American Arbitration Association in effect at the time of submission to arbitration. Each Partner consents for himself or itself, and for his or its respective successors in interest, to the submission of any dispute or controversy hereunder to the arbitration process as aforesaid, where such submission is initiated by any other Partner (or that Partner's successor in interest). The arbitration shall be conducted by a single arbitrator selected by the parties or, if they cannot agree, then the arbitrator or

(continued…)

also contain a choice-of-law provision stating "[t]his Agreement shall be construed and enforced in accordance with the laws of the State of Pennsylvania." Limited Partnership Agreement of MBC Development, LP, 5/14/02, at 25, § 12.6 (R.R. at 109-10a); Limited Partnership Agreement of MBC Properties, LP, 8/1/11, at 26, § 12.6 (R.R. at 140a).

On July 16, 2019 and August 12, 2019, Appellee in capacity as a limited partner served written demands on the LPs, pursuant to Section 8692 of the PULPA, 15 Pa.C.S. § 8692.[3] The demands requested that the partnerships bring actions to enforce the

---

arbitrators shall be selected under the procedures of the American Arbitration Association.

B. All decisions of the arbitrator shall be final, binding and conclusive on all Partners (including any decision with regard to costs as set out below in Section 11.2, and no Partner (and no successor in interest) shall have a right of appeal from any such decision to any Court. However, solely for the purpose of implementing the arbitrator's decision, judgment may be entered on the arbitrator's award in any court having jurisdiction.

MBC Properties, LP Partnership Agreement at 26, § 11.1; MBC Development, LP Partnership Agreement at 23, § 11.1.

[3] Section 8692 of the 2016 PULPA provided, in part:

**(a) General rule.**-- Subject to subsection (b), a partner may maintain a derivative action to enforce a right of a limited partnership only if:

(1) the partner first makes a demand on the general partners requesting that they cause the partnership to bring an action to enforce the right, and:

(i) if a special litigation committee is not appointed under section 8694 (relating to special litigation committee), the partnership does not bring the action within a reasonable time; or

(ii) if a special litigation committee is appointed under section 8694, a determination is made:

(continued…)

partnerships' rights relating to breaches of the partnership agreements, breaches of fiduciary duty, and sought other equitable relief, including an accounting. Appellee supplemented the initial demand letters in late 2019 and early 2020.

In response to Appellee's demands, on July 18, 2019 and August 13, 2019, the LPs notified Appellee that they were appointing a special litigation committee (SLC) under Section 8694 of PULPA, 15 Pa.C.S. § 8694, to investigate the claims and determine if it was in the LPs' best interests to pursue the claims.[4]  Accordingly, the LPs appointed

> (A) under section 8694(e)(1) that the partnership not object to the action; or
>
> (B) under section 8694(e)(5)(i) that the plaintiff continue the action;
>
> (2) demand is excused under subsection (b);
>
> (3) the action is maintained for the limited purpose of seeking court review under section 8694(f); or
>
> (4) the court has allowed the action to continue under the control of the plaintiff under section 8694(f)(3)(ii).

15 Pa.C.S. § 8692(a), Pa. Pub. Act. No. 2016-170 (H.B. No. 1398).  In 2022, the General Assembly amended portions of the PULPA, including parts of Sections 8692 and 8694, effective January 3, 2023.  See Pa. Pub. Act No. 2022-122, § 103 (H.B. No. 2057) (Nov. 3, 2022).  Our discussion pertains to the 2016 PULPA, which was in effect at the time of the SLC determination and Appellee's arbitration demand.  The parties, however, do not contend that the amendments to the PULPA are substantive.

[4] The general rule pertaining to SLCs stated in Section 8694 is:

> If a limited partnership or the general partners receive a demand to bring an action to enforce a right of the partnership, or if a derivative action is commenced before demand has been made on the partnership or the general partners, the general partners may appoint a special litigation committee to investigate the claims asserted in the demand or action and to determine on behalf of the limited partnership or recommend to the general partners whether pursuing any of the claims asserted is in the best interests of the partnership. The partnership shall send a notice in record form to the plaintiff promptly after the appointment of the committee under

(continued…)

Martin J. Cerullo, Esq. and William E. Kirwan, Esq., CPA to serve as the members of the SLC. Following its investigation, the SLC issued a final report on February 28, 2020, recommending that the partnerships take certain actions to address Appellee's issues but ultimately concluding the partnerships should not pursue any action against JLM or any other third parties. Report of the SLC, 2/28/20, at 41 (R.R. 222a) (explaining "[t]he majority of the claims raised by [Appellee] are either barred by the applicable statute of limitations or do not otherwise establish that the general partner or manager was acting recklessly and/or willfully."). Additionally, as relevant to this appeal, the SLC's report included a footnote stating its position was that an arbitrator would review its determination even though the PULPA expressly provides for court review:

> The Pennsylvania statutes discuss the review undertaken by a court. As discussed in Section V.D., *infra*,[5] any review conducted in this case will be made by an arbitrator. Even though any review will be conducted by an arbitrator, the SLC uses "court" here because that is the language of the statute and for ease of reference.

Report of the SLC, 2/28/20, at 2 n.3 (R.R. at 183a).

As alluded to by the SLC report, Section 8694(c) of the PULPA requires that an SLC "shall be composed of two or more individuals who: (1) are not interested in the claims asserted in the demand or action; (2) are capable as a group of objective judgment in the circumstances; and (3) may, but need not, be general or limited partners." 15

---

this section notifying the plaintiff that a committee has been appointed and identifying by name the members of the committee.

15 Pa.C.S. § 8694(a), Pa. Pub. Act. No. 2016-170 (H.B. No. 1398) (amended by Pa. Pub. Act No. 2022-122, § 103 (H.B. No. 2057) (Nov. 3, 2022)).

[5] The SLC's report does not contain a "Section V.D." and does not discuss this point any further.

Pa.C.S. § 8694(c). After an SLC issues a determination that it is in the best interests of the limited partnership that "an action not be brought based on any of the claims asserted in the demand," 15 Pa.C.S. § 8694(e)(4), Section 8694(f) provides for limited review of that determination as follows:

(f) **Court review and action.--**If a special litigation committee is appointed and an action is commenced before a determination is made under subsection (e):

(1) The limited partnership shall file with the court after a determination is made under subsection (e) a statement of the determination and a report of the committee. The partnership shall serve each party with a copy of the determination and report. If the partnership moves to file the report under seal, the report shall be served on the parties subject to an appropriate stipulation agreed to by the parties or a protective order issued by the court.

(2) The partnership shall file with the court a motion, pleading or notice consistent with the determination under subsection (e).

(3) If the determination is one described in subsection (e)(2), (3), (4), (5)(ii), (6) or (7), the court shall determine whether the members of the committee met the qualifications required under subsection (c)(1) and (2) and whether the committee conducted its investigation and made its recommendation in good faith, independently and with reasonable care. If the court finds that the members of the committee met the qualifications required under subsection (c)(1) and (2) and that the committee acted in good faith, independently and with reasonable care, the court shall enforce the determination of the committee. Otherwise, the court shall:

(i) dissolve any stay of discovery entered under subsection (b);

(ii) allow the action to continue under the control of the plaintiff; and

(iii) permit the defendants to file preliminary objections and other appropriate motions and pleadings.

15 Pa.C.S. § 8694(f), Pa. Pub. Act. No. 2016-170 (H.B. No. 1398) (amended by Pa. Pub. Act No. 2022-122, § 103 (H.B. No. 2057) (Nov. 3, 2022)).[6] Additionally, Section 8692(a) states that a plaintiff "may maintain a derivative action to enforce a right of a limited partnership only if," *inter alia*, "the action is maintained for the limited purpose of seeking court review under section 8694(f)[.]" 15 Pa.C.S. § 8692(a)(3). Moreover, Section 8615(c)(18) provides that a partnership agreement may not "[v]ary the provisions of section 8694 (relating to special litigation committee), except that the partnership agreement may provide that the partnership may not have a special litigation committee." 15 Pa.C.S. § 8615(c)(18).[7]

In this case, after the SLC issued its report, Appellee filed a demand for arbitration on May 17, 2021 with the American Arbitration Association (AAA) asserting derivative claims, including a request for the arbitrator to determine whether the SLC complied with Section 8694(f). Demand for Arbitration at 10-11 (R.R. at 46a-47a). In response, on June 2, 2021, the LPs, LLCs, JLM, Cerullo, and Kirwan filed a petition to permanently stay arbitration pursuant to 42 Pa.C.S. § 7304 in the Court of Common Pleas of Schuylkill County. The petition to stay asserted that the AAA lacked subject matter jurisdiction over Appellee's claims because those claims arose by statute, not under or in connection with

---

[6] Section 8694(f) was amended to add the following italicized language to Section 8694(f): "If a special litigation committee is appointed and a derivative action is commenced before *or after either the committee makes* a determination under subsection (e) *or the general partners determine under that subsection to accept the recommendation of the committee* . . ." 15 Pa.C.S. § 8694(f) (italics added to indicate amendment); Pa. Pub. Act No. 2022-122, § 103 (H.B. No. 2057) (Nov. 3, 2022).

[7] We note that the relevant provisions and comments of Sections 8615 and 8694 of the PULPA involved in this case are modeled after the Uniform Law Commission's Uniform Limited Partnership Act. *Compare* 15 Pa.C.S. § 8615 *with* UNIF. LTD. P'SHP ACT § 105; *compare* 15 Pa.C.S. § 8694 *with* UNIF. LTD. P'SHP ACT § 905.

the limited partnership agreements. Pet. to Permanently Stay Arbitration, 6/2/21, at 2, ¶ 5 (R.R. at 14a). Further, the petition to stay argued that any review of the SLC determination must be litigated in a court of common pleas. *Id.* at 3, ¶ 7 (R.R. at 15a).

On September 28, 2021, the trial court granted the petition to permanently stay the arbitration, concluding that Appellee's challenge to the SLC report arose statutorily and not under the limited partnership agreements. Trial Ct. Op., 9/28/21, at 12. The trial court began its analysis by noting that under 42 Pa.C.S. § 7304, a trial court may stay an arbitration "on a showing that there is no agreement to arbitrate." *Id.* at 4 (quoting 42 Pa.C.S. § 7304). The trial court explained that when confronted with a petition to stay arbitration, the law circumscribes a court's review to only: (1) whether the parties have a valid arbitration agreement; and (2) whether the dispute is within the scope of the arbitration provision. *Id.* at 5. Additionally, the court noted arbitration agreements must be strictly construed and any doubts or ambiguity as to arbitrability must be resolved in favor of arbitration. *Id.* (citing *Midomo Co., Inc. v. Presbyterian Hous. Dev. Co.*, 739 A.2d 180, 186 (Pa. Super. 1999)).

Applying the two-pronged test, the trial court concluded the first prong was met because "the parties, at the hearing and in the pleadings, have acknowledged the broad scope and validity of the arbitration clauses contained in the [a]greements." *Id.* However, the trial court held the second prong was not met because the issues in the arbitration demand arose statutorily, not from the partnership agreements. *Id.* at 7. The court found Appellee's issues "arise from the statute because of [Appellee's] own contention that the SLC did not act in accordance with the statute." *Id.* Looking to the arbitration demand, the court explained that it used 15 Pa.C.S. § 8694(f) as the legal standard for reviewing the SLC's actions. *Id.* at 7-8. Even though the arbitration clauses employed the broadest and most encompassing language, the court found Appellee's demand did not contain

issues arising under or in connection with the partnership agreements; instead, the demand challenged the SLC, which arose from the statutory procedure invoked by the LPs. *Id.* at 8. Turning to Section 8694(f), the trial court noted "court review" was "the only mechanism to challenge an SLC's investigations and determinations," and the comment to Section 8694(f) incorporates the definition of "court" as "the court of common pleas" in 15 Pa.C.S. § 102. *Id.* at 9. Accordingly, the trial court found that Appellee's claims arose statutorily and could not be subject to arbitration. *Id.* at 12. Appellee appealed to the Superior Court.

In a unanimous published opinion, the Superior Court vacated the trial court's order to the extent it permanently stayed Appellee's arbitration in its entirety.[8] *MBC Dev., LP v. Miller*, 281 A.3d 332, 341 (Pa. Super. 2022). Noting that "[b]oth Pennsylvania and federal law impose a strong public policy in favor of enforcing arbitration agreements," the Superior Court employed the same two-factor test as the trial court. *Id.* at 337. Like the trial court, the Superior Court remarked that it was undisputed that the arbitration clauses were valid, and the LPs, the LLCs, and JLM are parties to and bound by the arbitration agreements. *Id.*

Next, the Superior Court found the underlying derivative claims Appellee sought to arbitrate were within the scope of the arbitration agreements. *Id.* at 338. As Appellee's derivative claims asserted breach of the general partner's fiduciary duty to the partnership, the Superior Court concluded they "are plainly disputes 'arising under or in connection with' the Partnership Agreements, as the general partner's duties to the Partnerships arise under and are governed by the Partnership Agreements." *Id.* The court further remarked that the comments to PULPA Section 8615(c)(17) indicate that

---

[8] The Superior Court affirmed the portion of the trial court's order staying arbitration of the claims against Cerullo and Kirwan because they were not parties to the partnership agreements. Neither party appealed that aspect of the Superior Court's order.

derivative claims may be subject to arbitration, which is consistent with the conclusions of courts in other jurisdictions, the trial court in this case, and the SLC. *Id.*

Regarding the second factor, the Superior Court disagreed with the trial court's conclusion that Appellee's challenge to the SLC's determination did not arise from the partnership agreements. *Id.* at 338-339. Instead of setting forth a distinct statutory cause of action, the Superior Court viewed Sections 8692 and 8694 of PULPA as establishing "prerequisites to and limitations on a partner's assertion of derivative claims on behalf of the limited partnership." *Id.* at 339. The court continued that "[w]hether a prerequisite or limitation bars a claim that is within the scope of a valid arbitration agreement is a question that must be resolved by the arbitrator, not an additional requirement for arbitration that a court may determine before allowing arbitration to proceed." *Id.*

In support, the Superior Court relied on its decision in *Ross Development Co. v. Advanced Building Development, Inc.*, 803 A.2d 194 (Pa. Super. 2002), which distinguished between "substantive arbitrability" and "procedural questions." Specifically, the *Ross* Court explained that a trial court has jurisdiction to determine "substantive arbitrability," which is limited to the existence and scope of an arbitration agreement; however, the arbitrator must resolve procedural questions such as whether a party properly or timely invoked arbitration. *Id.* Applying *Ross*, the Superior Court opined that an arbitrator must decide the merits of defenses that do not go to the existence or scope of the arbitration agreement, even when a statute provides the defense or limitation on arbitrability. *Id.* at 340 (noting courts have held an arbitrator must resolve statute of limitations defenses).

Addressing the trial court's conclusion that the PULPA's use of "court review" and "the court" requires a court of common pleas to decide whether a derivative action may proceed when an SLC's determination is challenged, the Superior Court concluded that

those references did not mean that the courts of common pleas have exclusive jurisdiction over challenges to an SLC determination. *Id.* Instead, the Superior Court interpreted those provisions of the PULPA as "simply refer[ring] to 'the court' as the adjudicator of the effect of a special litigation committee determination where the action is brought in a court and refer[ring] to 'court review' without any suggestion of intent to bar other adjudicators from addressing the issue." *Id.* In the Superior Court's view, even though 15 Pa.C.S. § 102 defined court as the court of common pleas, the PULPA's use of "court" was not intended to preclude arbitration. *Id.* Relying on the comments to the PULPA, the Superior Court found that Section 102 and the references to "court review" and "the court" in Sections 8692 and 8694 "do not bar arbitrators from deciding issues where the partnership agreement provides for arbitration." *Id.* (noting the comments to Sections 8681(a)(6) and 8615(c)(15) state an arbitrator may dissolve a partnership whose agreement provides for binding arbitration). Accordingly, the Superior Court held the trial court erred in granting the petition to stay arbitration.

> Because there was a valid arbitration agreement binding on [the parties], [Appellee's] derivative claims were within the scope of that arbitration agreement, and the determination required by Section 8694 of the [PULPA] is a prerequisite and defense to those claims, rather than a cause of action, the determination of whether Section 8694 permits [Appellee] to litigate his derivative claims is a matter for the arbitrator to determine, not a ground for denying or staying arbitration.

*Id.* at 340-41.

## II. ISSUE AND STANDARD OF REVIEW

This Court granted review and rephrased the issue as follows:

> Whether a limited partner can force arbitration of his challenges to a special litigation committee—despite the Limited Partnership Act's mandate that a partnership

[J-46-2023] - 11

> agreement "may not . . . vary" the Act's requirement that those challenges be subjected only to a "court review"?

*MBC Dev., LP v. Miller*, 290 A.3d 643 (Pa. 2023) (per curiam).

This issue presents a legal question of statutory interpretation over which our standard of review is de novo and our scope of review is plenary. *Kornfeind v. New Werner Holding Co., Inc.*, 280 A.3d 918, 925 (Pa. 2022). In construing a statute, a court must give effect to the legislature's intent and to all the statute's provisions. 1 Pa.C.S. § 1921(a). The statute's plain language is the best indication of the legislature's intent. *Kornfeind*, 280 A.3d at 925. To determine a statute's plain meaning, a court must analyze the operative statutory language in context and give words and phrases their common and approved usage. *Id.* When the statutory language is clear and unambiguous, we must give effect to it and cannot disregard it to implement its objectives. *Id.* However, "[a] statute is ambiguous when there are at least two reasonable interpretations of the text." *A.S. v. Pa. State Police*, 143 A.3d 896, 905-06 (Pa. 2016). "Only if the statute is ambiguous, and not explicit, do we resort to other means of discerning legislative intent." *Matter of Private Sale of Prop. by Millcreek Twp. Sch. Dist.*, 185 A.3d 282, 291 (Pa. 2018). When a statute is ambiguous, courts apply the factors in the Statutory Construction Act to discern the legislature's intent. 1 Pa.C.S. § 1921(c).

## III. REVIEW OF A SPECIAL LITIGATION COMMITTEE'S DETERMINATION PURSUANT TO THE PARTIES' AGREEMENT

### A. PARTIES' ARGUMENTS

JLM, the LPs, and the LLCs (collectively Appellants) argue the application of the unambiguous statutory language resolves this case. Appellants' Brief at 14. Appellants maintain that challenges to an SLC determination cannot be submitted to arbitration under the PULPA because: (1) the Act specifies that SLC decisions are subject to only "court review;" (2) the Act defines "court" as solely the courts of common pleas; and (3) the Act

states that a partnership agreement "may not . . . vary" the Act's court review procedure. Appellants fault the Superior Court for ignoring the Act's plain language.

Reading the PULPA, Appellants note that a derivative action must begin with a partner's formal demand. Appellants' Brief at 15 (citing 15 Pa.C.S. § 8692(a)(1)). One way the statute permits a partnership to respond to a formal demand is by forming an SLC comprised of at least two people to conduct an objective investigation to determine the best interests of the partnership. *Id.* (citing 15 Pa.C.S. § 8694). If the SLC recommends against suing, Appellants insist the only recourse for a demanding partner is to bring an action "for the limited purpose of seeking court review under section 8694(f)." *Id.* at 16 (quoting 15 Pa.C.S. § 8692(a)(3)). Appellants emphasize that "court review" is statutorily defined, with "court" meaning "the court of common pleas" (15 Pa.C.S. § 102) and "review" is statutorily limited to a court determination of (1) whether the SLC members were disinterested and objective; and (2) whether the SLC made its recommendation in good faith, independently, and with reasonable care. *Id.* at 16 (citing 15 Pa.C.S. § 8694(f)(3)). In Appellant's view, if the court's review determines the SLC met those two requirements, it must enforce the SLC's determination, which ends the matter. *Id.* at 17. Appellants emphasize that the PULPA mandates the foregoing process. Moreover, the Act states that a partnership agreement "may not . . . vary the provisions of section 8694 (relating to special litigation committee), except that the partnership agreement may provide that the partnership may not have a [SLC]." *Id.* (quoting 15 Pa.C.S. § 8615(c)(18)). Based on the foregoing, Appellants' position is that the PULPA unambiguously provides that "a partnership cannot make any change to the directive that an SLC review can occur only in the local court of common pleas" unless the partnership agreement opts out of the SLC process entirely. *Id.* at 19.

In support of their position that the PULPA imposes mandatory rules on limited partnerships, Appellants note that our Court has recognized that the Act contains mandatory duties in *Hanaway v. Parkesburg Group, LP*, 168 A.3d 146 (Pa. 2017). *Id.* at 20. Appellants argue that the *Hanaway* Court recognized that PULPA shifted away from the freedom to contract in partnerships and established mandatory duties and restrictions on contractual freedom. *Id.* (citing *Hanaway*, 168 A.3d at 154-56 & n.15, 157-58 & n.20). Additionally, Appellants observe the Superior Court had previously recognized PULPA contained provisions that a partnership agreement could not vary in *Ratner v. Iron Stone Real Estate Fund I, LP*, 212 A.3d 70 (Pa. Super. 2019). *Id.* Appellants explain that the *Ratner* Court interpreted Section 8615(a)(16), which states that a partnership agreement may not vary the Act's wind-up provisions, and concluded a partnership agreement providing that the agreement would remain in effect after the partnership ended was unenforceable because it contravened Section 8615(a)(16). *Id.* at 21. In Appellants' view, *Hanaway* and *Ratner* show that the "may not . . . vary" language in Section 8615's subsections are "inflexible commands, no matter what a partnership agreement might say." *Id.* at 22. Accordingly, Appellants urge us to hold that Section 8615(c)(18) is a similarly "strict directive that a partnership agreement may not change." *Id.*

In response, Appellee characterizes his arbitration demand as "a derivative action that includes review of the SLC's determinations." Appellee's Brief at 15. As the partnership agreements broadly require arbitration of all disputes, Appellee argues that review of the SLC's determinations are part of the derivative action which must be resolved by an arbitrator. *Id.* Appellee acknowledges that a partnership agreement cannot alter some provisions of the PULPA, but he maintains that Section 8615(c)(18) does not create a carveout requiring "court review" when an SLC is involved. *Id.* at 17-19.

Appellee asserts that Sections 8615(c)(17) and (18), when read together in context, are ambiguous because they support "two interpretations of how partnerships may handle derivative actions." *Id.* at 20. Appellee highlights the comment to Section 8615(c)(17), which states that a partnership agreement cannot unreasonably restrict derivative actions, provides that "the partnership agreement might select a forum or provide for arbitration of both direct and derivative claims." *Id.* at 21-22 (quoting Pa.C.S. § 8615 cmt. 5, subsection (c)(17)). Additionally, Appellee observes that the comment to Section 8615(c)(15), relating to the prohibition against varying the grounds for judicial dissolution, states that the partnership agreement may nonetheless select the forum for dissolution and acknowledges "arbitration and forum selection clauses are commonplace in business relationships in general and in partnership agreements in particular." *Id.* at 22 (quoting 15 Pa.C.S. § 8615 cmt. 5, subsection (c)(15)). These comments to Section 8615, in Appellee's view, evince legislative recognition that a partnership could choose arbitration as the forum for derivative claims. *Id.* Moreover, Appellee points out that Section 8681(a)(6) provides that a limited partnership can be dissolved by "the entry by the court of an order dissolving the partnership," which cross-references the definition of "court" in Section 102; however, Section 8681's comments provide that the partnership agreement can change the forum from a court to binding arbitration. *Id.* at 23 (quoting 15 Pa.C.S. § 8681(a)(6)). Appellee contends that this shows the legislature considers arbitration as an appropriate forum even when the statutory language explicitly refers to "the court." *Id.*

Unlike Appellants, Appellee reads Section 8615(c)(18) as stating the partnership agreement cannot "vary the provisions of section 8694" as meaning it cannot alter the substantive rules of Section 8694. *Id.* at 24. Appellee maintains that selecting arbitration as the forum does not change the rules in Section 8694 because an arbitrator can apply

those rules just like a court can. *Id.* Further, Appellee posits that Section 8615(c) provides substantive rights that a partnership agreement cannot alter, but it does not address procedural rights. *Id.* at 25. Because the forum in which disputes are resolved is procedural, Appellee argues Section 8615 does not preclude arbitration. *Id.* at 26.

Further, Appellee contends the phrase "court review" in Section 8694(f) is not dispositive because permitting the parties to select arbitration as a forum to resolve their disputes does not vary the substantive portions of Section 8694 as an arbitrator can apply the statute's requirements in the same manner as a court. Appellee points out that the U.S. Supreme Court has recognized that an arbitration agreement is "a specialized kind of forum-selection clause that posits not only the situs of the suit but also the procedure to be used in resolving the dispute" but "does not alter or abridge substantive rights." *Id.* at 27-28 (quoting *Viking River Cruises, Inc. v. Moriana*, 596 U.S. ___, 142 S.Ct. 1906, 1919 (2022)). Additionally, Appellee explains that Pennsylvania courts have followed federal precedent favoring arbitration, such that our state's courts have enforced arbitration agreements regarding statutory claims even when the statute refers to the power of a "court" to award relief. *Id.* at 28-29 (citing, among other cases, *Saltzman v. Thomas Jefferson Univ. Hosps.*, 166 A.2d 465 (Pa. Super. 2017) and *Provenzano v. Ohio Valley Gen. Hosp.*, 121 A.3d 1085 (Pa. Super. 2015)). Accordingly, Appellee argues that Appellants' strict interpretation of "court" in the PULPA "runs afoul of the [Federal Arbitration Act], the Pennsylvania Uniform Arbitration Act, and the case law interpreting the enforceability of arbitration agreements." *Id.* at 30.

Appellee maintains the Superior Court's analysis was correct because Section 8694 is a prerequisite to a derivative claim, and "[t]he question of whether a prerequisite or limitation bars a claim that falls within the scope of an arbitration agreement is a question for the arbitrator, not a decision for the court prior to allowing an arbitration to

proceed." *Id.* at 33 (citing *TTSP Corp. v. Rose Corp.*, 217 A.3d 1269, 1281-82 (Pa. Super. 2019); *Theodore C. Willis Co. v. Sch. Dist. of Boyertown Area*, 837 A.2d 1186, 1189 (Pa. Super. 2003); *Ross Dev. Co. v. Advanced Bldg. Dev., Inc.*, 803 A.2d 194, 196-199 (Pa. Super. 2002)). Appellee stresses that he is not attempting to alter the substantive process for derivative actions or the limited standard of review for SLC determinations. Instead, he is merely seeking to enforce the contractual arbitration agreement and have an arbitrator apply Section 8694 to review the SLC determination. Accordingly, Appellee asks us to affirm the Superior Court and permit the claims to proceed to arbitration.

In their reply brief, Appellants argue that this case would require the court of common pleas to hear only challenges to the SLC determination which leaves in place the partnerships' arbitration agreements. Appellants' Reply Brief at 3-4. Further, Appellants disagree that this is a derivative action; instead, it is a challenge to the SLC's recommendations which subjects it to court review per Section 8694. *Id.* at 5-6. In Appellants' construction of Section 8615, subsection (c)(17) permits arbitration of derivative actions but subsection (c)(18) precludes arbitration of challenges to an SLC's recommendations. *Id.* at 6-7. Lastly, Appellants dispute Appellee's procedural/substantive distinction, contending that Section 8615 states a partnership agreement "may not vary" the SLC process, which includes court review of an SLC determination. *Id.* at 7-9. Appellants further note that Section 8615(c) contains both substantive and procedural limitations on partnership agreements, and the statute does not distinguish between substantive and procedural limits. *Id.* at 9-10.

## B. ANALYSIS

Judicial review of a petition to stay arbitration, "is limited to the question of whether an agreement to arbitrate was entered into and whether the dispute falls within the scope of the arbitration provision." *Kardon v. Portare*, 353 A.2d 368, 369 (Pa. 1976); *accord* 42

Pa.C.S. § 7304(b). As noted above, the limited partnership agreements contained an arbitration clause and a choice-of-law provision stating that the agreements would be construed and enforced according to Pennsylvania law. By selecting Pennsylvania law, the parties' limited partnership agreements chose to follow the SLC procedure outlined in the PULPA. For the reasons discussed below, the dispute over an SLC's determination pursuant to the PULPA, is not within the scope of the parties' arbitration agreement.

The clear and unambiguous language of Section 8694(f) of the PULPA mandates court review of an SLC's determination, and a partnership agreement may not vary Section 8694 pursuant to Section 8615(c)(18). As explained above, the PULPA provides that a limited partnership may appoint an SLC to investigate a limited partner's demand to bring an action to enforce a limited partnership's right and determine whether pursuing any of the claims in the demand is in the best interest of the partnership. 15 Pa.C.S. § 8694(a). The PULPA requires that an SLC be composed of at least two individuals who are not interested in the claims and are capable of objective judgment. 15 Pa.C.S. § 8694(c). If the SLC issues a determination, which the general partners accept, that it is not in the best interests of the partnership to bring an action based on the claims in the demand, the demanding partner may seek "court review" in which "the court shall determine whether the members of the [SLC] met the qualifications required under subsection (c)(1) [disinterested] and (2) [objective] and whether the committee conducted its investigation and made its determination or recommendation in good faith, independently and with reasonable care." 15 Pa.C.S. § 8694(f)(3). If "the court" finds the SLC met those criteria, "the court shall enforce the determination of the committee." *Id.*[9]

---

[9] We further note that Section 8694(f) provides for court review in cases where an SLC determines that (1) the partnership bring an action based on the claims in the demand; (2) the parties settle the claims on terms the SLC recommends; (3) an action already commenced continue under the control of the plaintiff, the limited partnership, or the SLC; (4) the parties settle the claims in an action already commenced on terms the SLC (continued…)

Further, the PULPA specifies that "court" is defined in Section 102 as "the court of common pleas of the judicial district embracing the county where the registered office of the corporation or other association is or is to be located[.]" 15 Pa.C.S. § 102; *see also* 15 Pa.C.S. § 8612(b) (providing the definition of court in Section 102 applies to the PULPA). Accordingly, we conclude the clear and unambiguous language of Section 8694 provides for only court review of a demanding partner's challenges to an SLC's determination.

Additionally, Section 8615(c)(18) is clear and unambiguous that "[a] partnership agreement may not . . . [v]ary the provisions of section 8694 (relating to special litigation committee, except that the partnership agreement may provide that the partnership may not have a special litigation committee." 15 Pa.C.S. § 8615(c)(18). Taken together, the plain language of Sections 8694 and 8615(c)(18) authorize only court review of an SLC's determination, a mandate that a partnership agreement may not vary. This is confirmed in Section 8692(a), which repeats that a plaintiff may bring a derivative action "only if" it "is maintained for the limited purpose of seeking court review under section 8694(f)[.]" 15 Pa.C.S. § 8692(a)(3). Section 8615(c)(18) provides that a limited partnership agreement may opt out of the SLC procedure in Section 8694, but the parties' agreements in this case did not contain such a provision. *See* 15 Pa.C.S. § 8615(c)(18). By selecting Pennsylvania law to govern the construction and enforceability of the partnership agreements and choosing not to opt out of the SLC process, the parties' agreement elected to follow the SLC process as provided in the PULPA.

Moreover, as we conclude the operative statutory language is clear and unambiguous, we do not consider the comments to the PULPA. "When a statute is

recommends; or (5) an action already commenced be dismissed. 15 Pa.C.S. § 8694(f)(3). In some of those other situations, it may be the limited partnership that is seeking court review of an SLC determination.

unambiguous, the commentary can serve only to confirm the statute's import, rendering resort to the commentary redundant, or to contradict the statute's plain meaning, which is impermissible. Thus, when a court identifies a statute as unambiguous, any reference it makes to the commentary is gratuitous." *In re Trust Under Deed of David P. Kulig Dated January 12, 2001*, 175 A.3d 222, 230 (Pa. 2017). To the extent Appellee and the Superior Court invoke the commentary to the PULPA to supplement the plain text or create an ambiguity, their analysis is unavailing as the comments are outside of the clear and unambiguous language of Sections 8615 and 8694.

Appellee's position that the partnership agreement's mandatory arbitration provision requires the challenges to the SLC's determination to proceed to arbitration contravenes the plain language of the PULPA, which the parties selected to govern their agreements, and therefore fails. In interpreting a contract, we must give effect to all its provisions, and we "will not interpret one provision of a contract in a manner which results in another portion being annulled." *Com. Ex. Rel. Kane v. UPMC*, 129 A.3d 441, 464 (Pa. 2015) (quoting *LJL Transp. V. Pilot Air Freight*, 962 A.2d 639, 648 (Pa. 2009)). Because Appellee's position renders the choice-of-law provision superfluous in that requiring arbitration of challenges to the SLC's determination would negate the parties' agreement to be bound by the PULPA, which provides for court review of the SLC's determination, we reject Appellee's argument. To give effect to the parties' intent to incorporate Pennsylvania law, we conclude that challenges to the SLC's determination must be subject to court review because that is the forum specified in the PULPA, and the PULPA further provides that a limited partnership agreement cannot vary its provisions.

Additionally, Appellee's suggestion that interpreting the term "court" in the PULPA to preclude arbitration "runs afoul of the FAA" is not persuasive given the parties'

agreement to be bound by the PULPA.[10]  *See* Appellee's Brief at 28-30.  Section 2 of the FAA states that an agreement to arbitrate in a contract involving interstate commerce or a maritime transaction "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, and Section 4 of the FAA allows a party to an arbitration agreement to "petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  The United States Supreme Court has explained that the FAA "was designed to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate, and place such agreements upon the same footing as other contracts[.]"  *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989) (internal quotation marks and citations omitted).  Further, "[Section] 4 of the FAA does not confer a right to compel arbitration of any dispute at any time; it confers only the right to obtain an order directing that 'arbitration proceed *in the manner provided for in [the parties'] agreement*.'"  *Id.* at 474-75 (quoting 9 U.S.C. § 4) (emphasis in original).

In *Volt*, the Supreme Court affirmed a California state appellate court's decision that a choice-of-law provision in the parties' contract, stating the contract was governed by "the law of the place where the project is located," meant they intended to incorporate the state rules of arbitration, including a provision staying arbitration pending the resolution of litigation between a party to the arbitration agreement and third parties, to apply to their arbitration agreement.  *Id.* at 472, 476.  In rejecting the argument that the state court violated the federal policy favoring arbitration, the Court explained "[t]here is no federal policy favoring arbitration under a certain set of procedural rules; the federal

_____

[10] Appellee's cursory treatment of the FAA does not identify which section of the FAA is purportedly violated nor does it argue that the FAA preempts any provision of the PULPA. *See* Appellee's Brief at 28-30 (mentioning the FAA).

policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Id.* Further, the Court acknowledged that the FAA preempts state laws that "require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Id.* at 478 (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)). However, the Court continued:

> [I]t does not follow that the FAA prevents the enforcement of agreements to arbitrate under different rules than those set forth in the Act itself. Indeed, such a result would be quite inimical to the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms. Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, so too may they specify by contract the rules under which that arbitration will be conducted. Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward. By permitting the courts to rigorously enforce such agreements according to their terms, we give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind by the FAA.

*Id.* at 479 (internal quotation marks and citations omitted). Similarly, in this case, the parties' agreements incorporated the PULPA rules governing the review of an SLC determination, and the trial court's decision to permanently stay the arbitration to enforce those rules as per the parties' agreement does not run afoul of the FAA.

In a dissenting posture, Justice Wecht opines that the FAA mandates the opposite outcome. Dissenting Op. at 8. He reads *Volt* as limited to situations where the parties' agreement selects alternative arbitration rules, which he insists is not this case because the rules to which the parties agreed, *i.e.*, the PULPA, preclude arbitration of the SLC determination in this case. *Id.* at 7-8. Based on this, he contends "[t]his is not a *Volt* case;

it is a *Southland* scenario." *Id.* at 8. However, this is a false dichotomy. *Volt* and *Southland* are complementary decisions. *Southland* held that the FAA preempts state laws that "require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland*, 465 U.S. at 10. *Volt* explained that *Southland*'s holding does not stand for the proposition "that the FAA prevents the enforcement of agreements to arbitrate under different rules than those set forth in the Act itself." *Volt*, 489 U.S. at 479. The key difference between *Southland* and *Volt* is that *Southland* involved a state applying state law to deny the enforcement of the parties' arbitration agreement whereas *Volt* involved a state enforcing the parties' arbitration agreement including its choice-of-law provision incorporating state rules of arbitration. *Compare Southland*, 465 U.S. at 10, *with Volt*, 489 U.S. at 472.[11] This case is more analogous to *Volt* because the parties' agreement incorporated Pennsylvania law, which includes PULPA, and we are enforcing the entirety of the parties' agreement. Further, our decision is not at odds with *Southland* because we are not applying state law to deny the enforcement of the parties' arbitration agreement. Justice Wecht maintains that *Volt* cannot apply here because this case is "not merely a matter of applying different state-law arbitration rules than those set forth in the FAA." Dissenting Op. at 7. However, the state law in *Volt* mandated a stay of arbitration pending the resolution of related litigation with third parties, which the Supreme Court acknowledged would have the effect of staying arbitration where the FAA would otherwise permit it, and the PULPA similarly requires a stay of arbitration pending the judicial resolution of challenges to the SLC determination. Like *Volt*, the parties here agreed to abide by Pennsylvania law, which

_____

[11] As quoted above, the parties' agreement in *Volt* included a general choice-of-law provision selecting "the law of the place where the project is located," and did not specifically select any state rules for arbitration to govern their agreement. *Volt*, 489 U.S. at 472.

includes the requirement that SLC determinations are subject to court review.[12] Accordingly, as in *Volt*, enforcing the parties' agreement here does not violate the FAA.

Additionally, the Superior Court's discussion of the distinction between substantive and procedural arbitrability is inapt in this case. *Ross*, upon which the Superior Court relied, is distinguishable from this case. The *Ross* Court concluded that the procedural arbitrability issue of whether the contractor's claims were timely submitted to the architect was a condition precedent to arbitration, which an arbitrator could decide if the court held the dispute was substantively arbitrable. *Ross*, 803 A.2d at 197. However, this case involves a statutory scheme, which the parties contracted to govern their agreements, in which the legislature expressly provided a trial court is the exclusive forum that must resolve the "procedural" issue of whether the SLC complied with Section 8694 and further provided that a partnership agreement cannot vary that requirement. Similarly, even accepting the Superior Court's analysis that review of an SLC's determination is not a distinct cause of action but part of a derivative action, we cannot agree that a partnership agreement can alter Section 8694's unambiguous requirement that a court review the SLC's determination before permitting the case to proceed to arbitration. Section 8694 sets forth prerequisites to a derivative claim, but it also provides the forum in which they must be adjudicated. Both Appellee and the Superior Court read "court" and "court

---

[12] Justice Donohue's concurring opinion declares that "there is no reason to look to" the express choice-of-law provision in the parties' agreement. Concurring Op. at 4. However, based on the above discussion of *Volt*, an express contractual provision reflecting the intent of the parties to incorporate Pennsylvania law into their agreement is essential to enforcing the terms of the parties' agreement. Moreover, the concurrence's approach of using state law to imply the terms of a statute into the parties' agreement raises an FAA preemption problem because under such approach there is no indication the parties intended to be bound by the PULPA, particularly when the express language of the mandatory arbitration provision suggests otherwise. The concurrence acknowledges the conflict between its implied term and the mandatory arbitration provision and resolves it by finding that the express arbitration provision cannot negate the implied term. *Id.* at 7-8.

review" out of Section 8694 and ignore the "may not vary" language of Section 8615(c)(18).

## IV. CONCLUSION

For these reasons, we conclude that the parties' agreements incorporated the plain language of Section 8694, which mandates court review of a special litigation committee's determination. Accordingly, the order of the Superior Court that vacated the trial court's stay of arbitration is reversed, and the case is remanded for proceedings consistent with this opinion.

Jurisdiction relinquished.

Chief Justice Todd and Justices Dougherty and Brobson join the opinion.

Justice Donohue files a concurring opinion.

Justice Wecht files a dissenting opinion.